Trans-Pecos Pipeline, L.L.C. So, a couple of the, I think the main case we rely upon in ours is the Duty Free case, which is out of the First Circuit, and it basically said that lower courts have held since 1975 that Younger applies to eminent domain proceedings. Now, I grant you it was a pre-sprint case, but they've unanimously held since 1975 that it applies. And they cited the Hawaii housing case, saying that it was a negative inference that the Supreme Court had said that as well. And I think you all can read that. In that case, in Hawaii, the case was filed. Number three says, number three is a court judicial function. You have the word, I recall, judicial. Right, judicial function. There is nothing probably more important in a condemnation case than the court, the judicial function of a court in eminent domain proceeding is to facilitate the immediate possession of the property if the condemnor satisfies the requirements. You can't do that if you stop the case at the commissioner's level before they get to make their decision. The court cannot give you possession and follow the statutes if they stop it midstream. So it clearly, when they appoint commissioners, when the court appoints commissioners, that is an order in furtherance of the court's ability to perform its functions that they interfered with through this action that they took. And they want to cite all these cases that concern administrative orders. Administrative orders, I can agree those theoretically are not in furtherance of a state court's ability to perform its judicial functions. But when you enter an order and someone comes in and tries to stop the effect of that order, that's exactly what Item 3 of Younger applies to. And I also wanted to go over the ‑‑ what happened here in terms of the moving. After the matter was pending in the federal court, you then move to the judicial function and then the native jurisdiction under the primary statute of the injunction act itself, not only the interpretation, the literal language of it, native jurisdiction. And to protect its own jurisdiction, that's the argument they're making, I think. You're talking about for the federal court to protect its own jurisdiction? When you walk through, I'm probably a little ahead of where you're going, but what you would end up with is that you were talking about this essential judicial function, but the federal district court had before it a pending application for an injunction. And then what's happened is it's essentially been by moving forward to moving it from the administrative side to the judicial side, after that, while that was pending, that effectively, you argued, dispossesses the federal court of its jurisdiction. But one of the elements of the ‑‑ one of the conditions of the anti‑induction act itself is the court can issue state proceedings and can enjoin when necessary to protect its own jurisdiction. That would be the argument they're articulating. I'm not describing that in a suggestion to you that's applicable here, and I'm trying to get that argument back before you because I don't ‑‑ you're not focused precisely on that. I'll focus on that. And I think Sprint was very ‑‑ I mean, Sprint said a lot of things, and I think it told everybody that federal courts don't necessarily just defer to the state courts. I read that. Unless you fall within one of those three categories, then they must abstain. And what did they do in this case? They went in and filed an injunction request after the judge had appointed commissioners. In fact, they instruct one of the commissioners after he appointed them. Administrative, I proceeded. Administrative. But it was the court's order that appointed the commissioners, and the commissioners were proceeding to a hearing, and they filed an injunction trying to stop the effect of that court's order. One other thing, but quite clear. It doesn't matter whether the court is the one doing it or that somebody else is doing it. It's a characterization of the function. A state court can be functioning with an administrative hat or a judicial hat. We're on the same page on that. We are. Are we? We are. Okay. But I think where we split hairs is, it says in the younger. That's the law. Right. But it is still, even though it's an administrative phase, it is part of a civil proceeding. There is no question that a condemnation case is a civil proceeding from the time it's filed to the time it finishes. Even though it goes through an administrative phase and a judicial phase, it is clearly a civil proceeding. And, I mean, I think the item three, it just hits it squarely because I think there could be no doubt that what they asked the federal court to do was to interfere with the order appointing commissioners, which would prevent the state court from performing its judicial function and moving forward in a condemnation case. It would stop the case in its tracks. I mean, just completely shut it down. That's for an error case in which you go and try to proceed. And I don't know. You guys probably had the chance to read the pot case from Georgia. Two things. I wasn't going to say it, but I will now. One, watch the finger pointing. Okay. Two, don't refer to us as you guys. I'm sorry, Your Honor. I didn't realize that. Now let me ask you a question. Go ahead. It's not esoteric. Is this when I was in JAG school, I had a procurement professor who said when they tell you that the principal is more important than the money, it's the money. When they tell you the money is more important than the principal, it's the principal. So my question is, is this a case where the principal, P-R-I-N-C-I-P-L-E, is more important than the money here? Or is this a case that money is really the solution or driver, given that the pipeline is laid and all of that sort of stuff? Do you follow what I'm saying? I do, Your Honor. These are very complex, multilayered constitutional questions that are argued in the briefs and raised, and, you know, he wants a pronouncement from the panel about all these things and so on and so forth. But the bottom line, we've got a pipeline that's down, that gas is flowing through it to Mexico, and I won't go any further into the Mexico piece of it, that it's just, you know, the genie's out of the bottle to a degree. So I'm trying to get to, you know, is this a case where a pronouncement from our panel, back to the district court, more proceedings, et cetera, et cetera, on all these important principles is really driving here, or is this a case where it's really about the money, somewhere deep down below, to say here's where we are, you know, from here, you know, where does this go? And I don't ask that as a facetious question at all. Many of these, most of the condemnation cases that make it to the level this did or even the lower level are about money. I mean, that's, I mean, I can't deny that. In fact, we could have filled the record with. That's the best straight-on answer I've had all week. All right. I'm about to take you away from it. I just want to make sure that I'm not totally deluded about, you know, the money issue, this notion of ripping up, but the notion to me of ripping up this pipeline and the gas not flowing, notwithstanding, you said in answer to Judge Hickman, that your company would pay it. I mean, somehow to me that's just a nonstarter. I mean, but maybe I'm missing something. But anyway, go ahead with your argument. You've answered my one question. You've answered. With all things, Your Honor, everything is a degree. Okay. All right. It depends on how many numbers are behind the figure, I think. All right. I got you. I'll go ahead. I only have about two and a half minutes left. I'll cover very briefly some of the questions that were asked, I think, earlier about the actual merits, the case on the merits. We don't believe that they should get, that this honorable court should get to the merits because of the two hurdles that are in the way of it. But we do have the Joyner case that was decided that went to the Supreme Court. The Supreme Court didn't write an opinion on it, but it is Supreme Court authority, and they upheld the Texas condemnation system, looking at cases from various other states. Your smart decision for the Fifth Circuit, the smart decision, also upheld it. This standaless delegation is really just a red herring. Texas does have checks and balances for the condemnator's decision of necessity to move on a project. They have an absolute right in a condemnation case to contest our declaration of necessity that the routing, the amount of land, all of those things under abuse of discretion are arbitrary and capricious standard. Now, it is a heightened standard, but that's been the standard that Texas and most other states have had since they passed eminent domain statutes back in the 1800s. And, of course, they've upheld that across the country. And I realize I'm down to about a minute, so I'll mention one other thing. They attack it on two bases. They attack it on standaless delegation, and then they attack it on the quick take. And that has been upheld. I don't know. I could just go through a litany of cases on that. But across the country, from a United States Supreme Court standpoint, in every state in the country has upheld the quick take. And why do they uphold the quick take? Because the landowner is protected by the initial deposit, and in most cases additional money on top of that. And almost every condemnation system has a procedure for what happens if the condemnator is wrong where they have to pay for the possession and the removal of the pipeline system. So the constitutional guarantees and the protections are there, and it's why it's been upheld across the nation. I appreciate your time. You mentioned about the state court proceeding. What's the next foreseeable step in the state court proceedings? The next foreseeable step we have, there's two issues in a state condemnation case. One is the right to take if they challenge it, and the other is compensation. And so right now we're trying to get the court to rule on the right to take issue, leaving only compensation to be decided, and then it will be either decided by the court or by a jury. And that's done de novo without any consideration being given to what the special commissioners did. You can't even introduce that into evidence. So there's a brand new look in the court as to compensation. Does this have any kind of a ñ I know in Louisiana these things have a fast track expedited trajectory, you know, like election suits almost. In condemnations, I mean, they move swiftly, you know, on our dockets because of, you know, the nature of the deal. So I guess my question in Texas, is this an expedited or an accelerated state process, or is it just moved to the normal civil steps? It does say that. In fact, there have been cases that have interpreted the statute that said the legislature enacted a system to provide for the quick possession of property so that public projects could be brought online quickly. So the possessory part of a condemnation case is very quick, whereas the compensation part can lag behind that by some degree. All right. Well, part of the reason I ask you about the money side of it is that, well, I ask because of the obvious reason. But as part of the court's apparatus, we do have a very adept circuit mediation office that are staffed by very excellent mediators. The way it's set up, there's a proverbial wall between us judges in that office, so we don't know what's over there, who's there, who turns it down, yada, yada, yada. But in many cases, enough, either before it gets to us in this stage or argument or otherwise, the parties are able to work through that office. If it works out, narrows down, yada, yada, yada, sometimes they go away, sometimes they don't, and we deal with it. So it's just a matter of making the parties aware that the circuit mediation office is located here, and to the extent that money may be a factor, or if not, even narrowing the principles down or otherwise moving this thing along, we would at least want both of you to check it out, as we say, and see. If not, but nobody, this is not a pronouncement from here to abandon the legal principles and arguments being made, but just simply to say it does strike of a kind of dispute that has a lot of different layers, their time issues, money issues, part, et cetera, and they're very adept at pulling those kind of things, particularly in big commercial cases, to move them along to a point more expeditiously than get a ruling. We just simply, if we know that it's going on, put the stopper in the bottle, and, you know, if it doesn't, then we do what we do in terms of the issues. So I just wanted to say that to all concerned, but they're on this same floor, the second floor around the corner. So if you're not catching the first thing smoking out of New Orleans, it may be, you know, at least worth checking out, so to speak. If not, email them. Vic Shandock is the senior circuit mediator, and he travels throughout Texas doing mediations, and they work a lot of them out. But anyway, that's just what we call in Louisiana, Lanyap. All right. Thank you, sir. We'll definitely look into that. Thank you very much for your time. All right. Back to you, Vic. I did ask the question really in all seriousness of whether, you know, not abandoning all these principles, but given all that's transpired here, is somewhere money a solution? Well, yes. I mean, I have an answer to that. Part of it comes from I actually argued a case in front of the Supreme Court involving the Pecos River, and we were arguing the principle, and I'm a principles guy, not a money guy. Anybody will tell you that, especially my wife. But what I can say is that argument, I think this is important. Justice Scalia said to me, we were arguing for the compact strict enforcement, which we ultimately got. But Justice Scalia said to me, come on, everybody has a price. And I'm sure that's true. And, in fact, it turned out to be so for Texas. Once the principle was established, you could determine if there was a price that would take care of the principle. Our argument here is the principle here is they shouldn't be able to take its property using eminent domain. That changes the whole dynamic. What would happen if the principle is taken away? I mean, it is enforced that they can't do that. I'm not the guy to ask whether it would lead to anything, but it could, just as you said and just as Justice Scalia said. Let me talk to a few. Let me ask on the Anti-Injunction Act. I mean, it seems to me it's a difficult issue because you cite cases like Prentiss and Raudbusch from the Supreme Court where they said, no, the Act doesn't apply because those whole proceedings are administrative. Yes. They cite cases where the Act did apply because the whole proceeding was judicial. We've got this hybrid here. So it starts out administrative, but it ends judicial. I think pretty much everyone agrees on that. It doesn't have to. Well, you're saying if no one files an objection, it wouldn't end up being judicial. Is that what you mean? Right. And you don't know ahead of time. I interrupted you. I apologize. No, but it's a proceeding that can result in a judicial resolution. And the proceeding itself has commenced. So what's your best case for splitting it into — I mean, I think your argument requires splitting it into almost two separate proceedings. Yes. Well, my best case is the fact that there is no case saying that. Right? That's the best case. I don't think there's a case the other way. I mean, I think that's why — Well, Hill v. Martin, 1935, Supreme Court case that we didn't give as much attention to, talked about — I can't remember the exact phrase, and I apologize, but it talked about it hasn't moved into the judicial phase, which suggests that as long as it hasn't made that transition, you can still enjoin it, which makes perfect sense, because a lot of those other cases — I haven't done the analysis of them, but in those cases, Rautenbusch, Prentiss, and all that, all those cases, kinds of cases, tend to end up at some point in court. If somebody doesn't like what the Virginia Corporation Commission has done with respect to an adjudication of rates, it can move into the judicial phase of the challenge to the rates and so on. They did that all the time back then. So I don't think that is an impediment. But the best quote I have, and I can't remember the facts of Hill v. Martin, but the best quote of that is from Hill v. Martin directly saying the transition — until the transition happens, you get to take advantage of the fact that it has to be a state judicial proceeding, and it's not. Your question is not whether it's moved to the court. The question is whether the proceedings themselves are judicial or administrative. Yes. The courts — a court can be wearing its administrative hat. And that's — To be more precise with the question, is that an administrative proceeding? Now, that's the Supreme Court. I read the law. That's what I read it as, too. All right. The state court was not acting judicially when we sought, had a hearing on, and were denied and took appeal of the issues with respect to an injunction that could affect those proceedings. And we were not trying to stop those proceedings. We were trying to keep them from taking possession. The Joyner case that was cited — I haven't known something about it because it was cited by three-judge court or the judge I clerked for just before. It specific — it upheld the quick take provision of the Texas Constitution. It was a public — they made the emphasis that it was a public entity doing the taking. That's a distinction. But they emphasized, we aren't sure where due process is going. They said this specifically. And if you know the court, you can understand why. We aren't sure where due process is going. It hasn't gone that far yet. Now it has gone that far. The James Dean — I say James Dean. I keep thinking of a distillery, too. But there's a case I cite. It involves civil forfeiture. Justice Kennedy wrote the opinion in 1992, I think, that says you have a right to notice and an opportunity for a hearing before you are forced to civilly forfeit your proceeding. And I think that case lays the groundwork for saying the quick take provision is invalid. This court has not upheld quick take in the case that they cited, Texas — I can't remember the name of it. This court said that what was not invalid under the Texas statute is the requirement — the rule that if you take the money out that's deposited into the court, they can take possession. And that hasn't happened here. That's all you've ruled on in that case. All right, counsel. You've got a red line. I think we've got the argument. And I appreciate the argument and help on both sides when it's a complex issue, to put it mildly. The case will be submitted on the briefs and we'll take into account the oral argument. All right, let's call up the third case.